Elizabeth A. O'Halloran, Esq.
MILODRAGOVICH, DALE,
STEINBRENNER & NYGREN, P.C.
Attorneys at Law
620 High Park Way
P.O. Box 4947
Missoula, Montana 59806-4947
Telephone: (406) 728-1455
Telefax: (406) 549-7077
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| CHERYLE PETTIGREW,<br><br>      Plaintiff,<br><br>-vs-<br><br>ROCKY MOUNTAIN COLLEGE,<br><br>      Defendant. | Cause No. CV-07-151-BLG-RFC<br><br>**COMPLAINT AND DEMAND FOR JURY** |

COMES NOW the Plaintiff, by and through counsel of record, and hereby alleges the following Complaint:

### JURISDICTION

1.  This Court has jurisdiction over Plaintiff's federal discrimination claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3)-(4).

2.  Plaintiff is not required to exhaust her administrative remedies for her claims under the Montana Human Rights Act, the Rehabilitation Act, or the Americans with Disabilities Act.

**COMPLAINT AND DEMAND FOR JURY** - Page 1

3. Pursuant to Mont. Code Ann. § 49-2-509(5), Plaintiff is entitled to bring her claims under the Montana Human Rights Act in this Complaint.

4. Jurisdiction over Plaintiff's claims under the Montana Human Rights Act is proper pursuant to 28 U.S.C. § 1367(a), because these claims are related to those of Plaintiff's claims within the original jurisdiction of this Court that they form part of the same case or controversy under Article III of the United States Constitution.

5. Jurisdiction over Plaintiff's Title VII claims is proper pursuant to 42 U.S.C. § 2000e-5(f).

6. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2). The events giving rise to the claim occurred in this District.

## PARTIES

7. Plaintiff hereby re-alleges the allegations contained in Paragraph 1 through 6 above.

8. At all times relevant to this Complaint, Plaintiff Cheryle Pettigrew was a resident of Yellowstone County, Montana. She was enrolled in the Rocky Mountain College Physician's Assistant - Masters of Science Program during the 2004-2005 and 2005-2006 academic years.

9. Defendant Rocky Mountain College is an institution of higher education located in Yellowstone County, Montana. Rocky Mountain College is a corporation registered and in good standing with the Montana Secretary of State.

10. The issues involved in this litigation arise out of two federal questions: (1) whether Rocky Mountain College has violated the Americans with Disabilities Act and (2) whether Rocky Mountain College has violated Section 504 of the Rehabilitation Act of 1973. Ancillary issues of state anti-discrimination laws are also raised in these proceedings.

//

//

## FACTS COMMON TO ALL CLAIMS

11. Plaintiff hereby re-alleges the allegations contained in Paragraph 1 through 10 above.

12. Plaintiff was admitted to the Rocky Mountain College Physician's Assistant - Masters of Science Program ("PA Program") and began classes in July of 2003. The PA Program is an integrated full-time, 25-month program consisting of 25 courses totaling 63 semester hours.

13. Plaintiff's undergraduate grade point average upon entering the program was 3.4. After struggling through the summer session, Defendant offered her the opportunity to drop out of the program, take refresher classes at the undergraduate level, and continue the PA Program in July of 2004. Plaintiff accepted the proposal, successfully completed undergraduate refresher courses, and returned to the PA Program for the 2004-2005 and 2005-2006 academic years.

14. Plaintiff consistently attended the required classes, met with her advisors, completed assignments in a timely manner, interacted with her professors and classmates, spent time studying with a tutor, and otherwise met all the requirements for completing the PA Program.

15. During course examinations, Plaintiff experienced significant anxiety, could not properly comprehend the test questions, and had trouble completing the examinations within the time allotted. She continually spoke to her program advisor about her testing issues and requested help on numerous occasions about how to improve her testing ability. However, no meaningful assistance was provided by Defendant.

16. In December of 2004, Plaintiff sought help from Robert Tompkins, Ed.D., Licensed Certified Psychologist. After testing and assessment, Tompkins determined that Plaintiff demonstrated auditory encoding difficulties and other language retrieval issues that would suggest a language-based learning disorder. The report also stated that there was a strong

possibility that Plaintiff had a subtle ADD of the inattentive type, that she had very average academic skills and some specific learning difficulties with non-verbal comprehension and auditory memory that appeared to be more of encoding difficulty that could be related to attentional factors.

17. On December 31, 2004, Plaintiff presented Tompkins' Report to Defendant.

18. After receiving Tompkins' Report, the Director of the PA Program suggested that Plaintiff take time off to strengthen reading and vocabulary skills by implementing coping tools suggested to Plaintiff by Tompkins. On January 7, 2005, Plaintiff indicated in a letter to Defendant that she was taking the Spring 2005 semester off to implement the learning tools as suggested by Tompkins and would resume the Program in July 2005.

19. On April 8, 2005, Defendant wrote to Plaintiff, stating it was Defendant's intent that Plaintiff return "with a clean slate" in July 2005. Defendant stated that the PA program "is preparing to provide accommodation for [Plaintiff's] learning disability by ensuring a quiet testing environment and a 20% additional time in which to test." The 20% extra time for testing, which worked out to an extra ten (10) minutes for Plaintiff's exams, was based on the six (6) hour Physician Assistant Certification Examination which, at the time, allowed students with documented learning disabilities nine (9) hours, or time and a half, to complete the test. In December 2005, the Physician Assistant Certification Examination accommodations changed to double time.

20. Plaintiff objected to the accommodation on the basis that the 20% extra time for testing was not adequate to accommodate her disability.

21. Plaintiff resumed the PA Program in July 2005. On multiple occasions beginning the first week of classes in the July 2005 through November 2005, Plaintiff communicated to her advisor and the associate program director her concerns regarding the inadequacy of 20% extra time for exams.

**COMPLAINT AND DEMAND FOR JURY - Page 4**

22.     On December 2, 2005, a few days before final examinations, Plaintiff gave Defendant additional documentation, prepared by her psychologist, of her disability. The documentation states that Plaintiff:

> "manifests less adequate test performance than her level of competence. She reports that in her undergraduate studies that she did quite well with more liberal time limits on test taking. I would think that she is likely to perform better overall with increased time on tests that are primarily verbal in nature. Test taking is a problem for her and any substantial change in time limits are likely to have the same result as she apparently demonstrated at the undergraduate level."

23.     With her psychologist's documentation, Plaintiff submitted a letter to Defendant requesting un-timed final examinations and un-timed tests for the remainder of her studies.

24.     Plaintiff received no response from Defendant regarding the additional documentation by her psychologist or regarding her request for un-timed tests. She took her final examinations from December 5, 2005 through December 7, 2005, all timed.

25.     In a letter dated December 19, 2005, the associate director of the PA program notified Plaintiff that she was being dismissed from the program due to her poor academic performance on her final examinations. Plaintiff appealed her dismissal, in writing, to the Defendant's academic vice president on January 2, 2006. Her stated basis for the appeal was that the test-taking accommodations provided to her for the final examinations were inadequate in light of her learning disability.

26.     On January 6, 2006, Plaintiff's appeal was upheld and she was allowed to continue the program under the following conditions: (1) she would be on probation; (2) should she fail to meet the academic requirements of the program she would voluntarily withdraw; (3) she would work with program faculty on remediation of two exams, pathological physiology and epidemiology; and (4) she would work with the college's disability coordinator and the program to outline clearly the accommodation she would receive, including an allowance for double-time on exams.

27.     By January 12, 2006, an accommodation plan was finalized that included double-time for exams, test-taking in a private room with a proctor and reader, and an opportunity to re-take the pathological physiology final exam. The plan specified that the highest score she could receive on the exam was 60%. Plaintiff was also informed that she would not be able to re-take the epidemiology final exam that she had failed because fellow students within the class, including Plaintiff, had received an additional ten (10) points for an extra-credit project and class participation. According to the PA program, this changed her exam grade to a passing grade of 65% and she was not allowed to retake the examination.

28.     On January 17, 2006, Plaintiff appealed again to the Defendant's academic vice president. The bases of her appeal included: (1) adding extra-credit points to her original exam score rather than to her potential score after re-taking the exam was a misapplication of published policy, and if the policy was properly applied, she would be entitled to retake the epidemiology exam; and (2) the limitation of her potential score on retake exams to 60% was a retroactive application of a changed policy.

29.     On January 18, 2006, responding to Plaintiff's appeal, Defendant's academic vice president allowed Plaintiff to retake the epidemiology exam, but refused to allow her to receive higher than a 60% on any retaken exams, stating it was "the common practice" of the PA program to limit retakes to 60%. At the time, Defendant had no policy to this effect in writing.

30.     Plaintiff was allowed two (2) days to consider the Defendant's offer and, if she refused Defendant's terms, she would be dismissed from the program.

31.     Plaintiff refused Defendant's offer and withdrew permanently from the program on January 20, 2006.

32.     Defendant failed to take affirmative steps to address Plaintiff's learning disability relative to her PA degree and efforts to obtain it.

33.     Plaintiff has been damaged by Defendant's failure to adhere to its obligations to

reasonably accommodate her disability because: (1) she was denied credit for the two years spent in the PA program, rendering her matriculation essentially worthless; (2) Plaintiff incurred more than $50,000 in student loans to pursue to PA degree; (3) currently, Plaintiff must pay approximately $550 more each month in rent and approximately $2,000 more each trimester for tuition to pursue her course of study at Cleveland Chiropractic College; and (4) will not begin earning wages until she graduates from Cleveland in 2009 or 2010.

## COUNT I
## THE REHABILITATION ACT OF 1973

34. Plaintiff hereby re-alleges the allegations contained in Paragraph 1 through 33 above.

35. Defendant received federal funding for its programs and activities, including the PA program offered by Defendant to its students.

36. The programs and activities of Defendant's PA program are subject to the requirements of the Rehabilitation Act of 1973, pursuant to § 504 of the Act.

37. Plaintiff, an otherwise qualified individual, has been excluded from participation, denied the benefits of, and/or subjected to discrimination under the Defendant's PA program solely on the basis of her disability.

38. Plaintiff has been damaged by her exclusion, denial of benefits, and the discrimination to which she has been subjected by the Defendant.

## COUNT II
## AMERICANS WITH DISABILITIES ACT

39. Plaintiff hereby re-alleges the allegations contained in Paragraph 1 through 38 above.

40. Plaintiff is a qualified individual with a disability for whom reasonable accommodations must be made in the provision of public accommodations.

41. Defendant's educational offerings, including the PA program, are subject to the requirements of the Americans with Disabilities Act.

42. Denial of course substitutions and the failure to reasonably accommodate Plaintiff's learning disability constitutes discrimination under the ADA.

43. Plaintiff has been damaged by the Defendants's failure to reasonably accommodate her disability.

## COUNT III
## MONTANA HUMAN RIGHTS ACT

44. Plaintiff hereby re-alleges the allegations contained in Paragraph 1 through 43 above.

45. Defendant, as an educational institution, is precluded from discriminating against its students under the Human Rights laws of the State of Montana.

46. Defendant's failure to reasonably accommodate or to provide the benefits available to Plaintiff violates Defendant's obligations under the Human Rights laws of the State of Montana.

47. Defendant has discriminated against Plaintiff on the basis of a disability.

48. Plaintiff has been damaged by Defendant's violation of Montana's Human Rights laws.

WHEREFORE, Plaintiff demands judgment and prays for relief against Defendant as follows:

1. An order granting preliminary and permanent injunctive relief and declaratory relief as appropriate;

2. An award of monetary damages for violating Plaintiff's rights to be free from discrimination on the basis of disability under the Rehabilitation Act, Americans with Disabilities Act, and the Montana Human Rights Act; including, but not limited to, student loans

incurred by Plaintiff while in the PA program, pain and suffering, emotional distress, and loss of established course of life, in an amount to be determined at trial;

    3.    An award of all attorneys' fees and costs, including an award of fees and costs pursuant to the Rehabilitation Act, Americans with Disabilities Act, and the Montana Human Rights Act;

    4.    An order enjoining the Defendants from taking any disciplinary, adverse discriminatory, retaliatory or prohibited action against Plaintiff and other similarly situated students;

    5.    Prejudgment and post-judgment interest on the amounts awarded;

    6.    An award of all such further relief as the Court deems just and proper.

DATED this 14th day of November, 2007.

        MILODRAGOVICH, DALE,
        STEINBRENNER & NYGREN, P.C.
        P.O. Box 4947
        Missoula, MT 59806-4947
        Telephone: (406) 728-1455
        Fax: (406) 549-7077
        Attorneys for Plaintiff


        By:  /s/ Elizabeth A. O'Halloran
              Elizabeth A. O'Halloran

//

//

//

//

//

//

//

## DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff and demands a jury trial on all issues of fact in the above case.

DATED this 14th day of November, 2007.

> MILODRAGOVICH, DALE,
> STEINBRENNER & NYGREN, P.C.
> P.O. Box 4947
> Missoula, MT 59806-4947
> Telephone: (406) 728-1455
> Fax: (406) 549-7077
> Attorneys for Plaintiff
>
>
> By: /s/ Elizabeth A. O'Halloran
>      Elizabeth A. O'Halloran

11555/2(lkh)
I:\WORLDOX\DOCS\CLIENTFL\11555\002\cmp\00111303.WPD